**OLD BEN COAL COMPANY, Petitioner,**

v.

**Mary E. PREWITT, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 83–3070.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 23, 1984.

Decided Feb. 21, 1985.

Rehearing and Rehearing En Banc Denied May 6, 1985.

Derwood H. Rusher, II, Lexington, Ky., for petitioner.

Harold B. Culley, Jr., West Frankfort, Ill., for respondents.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The Old Ben Coal Company asks us to set aside an order of the Benefits Review Board of the Department of Labor, directing the company to pay benefits to Mary Prewitt, the widow of a coal miner, under the Black Lung Benefits Act, which is Title IV of the Federal Coal Mine Health and Safety Act, as amended, 30 U.S.C. §§ 901–960. An administrative law judge denied benefits, but his decision was reversed by the Board as unsupported by substantial evidence; and the first question we must consider concerns our standard of judicial review when the Board has reversed the administrative law judge on that ground.

■ The Black Lung Benefits Act, in 30 U.S.C. § 932(a), incorporates by reference the judicial review provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c); and although section 921(c), in authorizing judicial review, does not indicate what the standard of review is, there is an established standard in black lung cases in this circuit, as well as every other circuit that has considered the matter. It is whether the court of appeals believes that *the administrative law judge's decision* was supported by substantial evidence; if it was, then the Benefits Review Board's decision reversing the administrative law judge must itself be reversed, even if that decision could also be said to be supported by substantial evidence. See, e.g., *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 971 (7th Cir.1984); *Kalaris v. Donovan*, 697 F.2d 376, 382–83 (D.C.Cir.1983); *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172–73 (3d Cir.1981). The Fourth Circuit once rejected this standard, believing that the issue should be whether the Benefit Review Board's decision, not the administrative law judge's decision, is supported by substantial evidence; but it has now

lined up with the other circuits. See, e.g., *Wilson v. Benefits Review Board,* 748 F.2d 198, 199 (4th Cir.1984).

█ Granted, the prevailing standard can be questioned on three grounds:

1. All the cases adopting it rely ultimately on a decision based on another and distinguishable system of judicial review, *Peabody Coal Co. v. Benefits Review Board,* 560 F.2d 797, 799 (7th Cir.1977).

2. The statute governing judicial review of decisions of the Benefits Review Board does not suggest that the scope of review is as broad as our standard implies—in fact, as we have said, the statute is silent on the standard of review.

3. In cases under section 921(c) that do not involve black lung benefits, this court asks whether the administrative review board's decision, not the administrative law judge's decision, is supported by substantial evidence. See *Strand v. Hansen Seaway Service, Ltd.,* 614 F.2d 572, 574 (7th Cir.1980).

█ Nevertheless we think *Chubb* was correctly decided. In the administrative process as usually conducted, the agency itself (corresponding to the Benefits Review Board in this case) exercises a power of plenary or *de novo* review of the administrative law judge's factfindings. That is, the agency makes its own findings; and if they are supported by substantial evidence, we must uphold them. But in a black lung case, as in other cases to which the procedures of the Longshoremen's and Harbor Workers' Compensation Act apply, the Benefits Review Board does not have the power of *de novo* review of factfindings. The Act provides that "the findings of fact in the [administrative law judge's] decision under review ... shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3); see also 20 C.F.R. § 802.301. Our decision in *Strand* relied on two Ninth Circuit decisions which had, as the Ninth Circuit later acknowledged, "overlooked the actual division of functions between the administrative law judge and the [Benefits Review] Board." *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980). When we review a decision by the Benefits Review Board reversing an administrative law judge's decision as unsupported by substantial evidence, our task is to decide whether the Board applied the substantial-evidence rule correctly—which means, decide whether the administrative law judge's factfindings are supported by substantial evidence. The Board's decision is highly pertinent to this question; it may explain convincingly where the administrative law judge went wrong. But the decision is not itself a source of findings to which we are required or permitted to defer. The findings are made by the administrative law judge, and if they are supported by substantial evidence the Board may not reject them and we must reverse the Board if it does. We need not consider what if any vitality our decision in *Strand* retains in cases that do not involve black lung benefits.

Although a majority of this panel (Chief Judge Cummings and myself) reaffirms the *Chubb* standard for the reasons stated in this opinion, a different majority (Chief Judge Cummings and Judge Cudahy) believes that the standard requires that the administrative law judge's decision be reversed and the decision of the Benefits Review Board affirmed, for reasons stated in Judge Cudahy's opinion. I disagree, for the reasons that follow.

There is a statutory presumption, which Prewitt's widow is entitled to invoke, that a coal miner who died before March 1977 after having worked for more than 25 years in a coal mine was at the time of his death at least partly disabled as a result of black lung disease and is therefore entitled to benefits. See 30 U.S.C. § 921(c)(5); 20 C.F.R. § 727.204(c). But the administrative law judge found that this presumption was rebutted—that the coal company had proved that Prewitt did not have black lung disease at all, or if he did have it was not even partially disabled by it, see 20 C.F.R. § 727.204(c)—and if either finding is sup-

ported by substantial evidence the Benefits Review Board must be reversed.

Prewitt died of heart disease, from which he had long suffered, and because of which he had spent a lot of time in hospitals and been examined many times in the years leading up to his death. Despite much opportunity in these examinations for doctors to diagnose possibly disabling black lung disease, the administrative law judge found on evidence he considered cumulatively persuasive that Prewitt had never been found by doctors to have disabling black lung disease. An X-ray taken shortly before his death was negative for black lung disease. An arterial gas study showed some breathing problems but not enough to meet the standard for disability under the black lung program. Two hospital discharge reports failed to mention black lung disease—as did Prewitt's wife, in the following exchange:

Q. Other than those two heart attacks that you told us about, are you aware of any other health problems that Mr. Prewitt had?

A. Let me think—his heart did steadily get worse. It would pertain to this heart. They called it heart failure.

Although this evidence is neither conclusive (Mrs. Prewitt is not a doctor) nor entirely free from ambiguity, it was for the administrative law judge, who had the considerable advantage over both the Benefits Review Board and us of having actually heard her testify, to interpret and weigh her testimony; we who have only the typed transcript before us cannot do that.

Despite all this, Prewitt may in fact have had black lung disease. A doctor who treated Prewitt reported a year before Prewitt's death that Prewitt had black lung disease, and referred him to a respiratory specialist who described him as suffering from "chronic obstructive pulmonary disease," which, whether or not technically black lung disease (pneumoconiosis), fits the statutory definition, which is broader than the medical. See 30 U.S.C. § 902(b); 20 C.F.R. § 727.202. And Prewitt's personal physician attributed his death to heart disease "complicated by pneumoconiosis." I am willing to grant, at least for the sake of argument, that there is evidence to invalidate the administrative law judge's finding that Prewitt did not have black lung disease. But it still is necessary to consider the finding that Prewitt was not disabled, even partially, by that disease when he died; for as pointed out earlier, this finding is enough to show that Prewitt is not entitled to black lung benefits.

True, if the administrative law judge's finding of no disability were dependent on his finding that Prewitt did not have black lung disease, any deficiency in the latter finding would infect the former. But the administrative law judge looked at the disability issue separately and made a finding, which is binding on the Benefits Review Board and on us if it is supported by substantial evidence on the record considered as a whole, that death from heart disease had overtaken Prewitt before black lung disease (if any) had progressed to the point of disabling him. No single item of evidence on which the administrative law judge relied in reaching this conclusion was conclusive (some, if standing alone, would have been insufficient as a matter of law to refute disability due to black lung disease, see 20 C.F.R. § 727.204(d)), but the administrative law judge was required to consider the evidence as a whole, and having done so he concluded that Prewitt had not been disabled by black lung disease when he died. The Benefits Review Board's effort to pick away at this conclusion is unconvincing. The medical reports on which the administrative law judge relied in concluding that Prewitt had not had black lung disease at all, while perhaps inconclusive on that point, were significant evidence that the disease had not progressed to the point of disabling Prewitt beyond what heart disease had already done to him; and the medical evidence that indicated that Prewitt may in fact have had black lung disease is not inconsistent with the conclusion that he was not disabled, in whole or part, by it when he died. If Prewitt had been disabled to any extent by black lung disease, some of the medical reports would

have so indicated—or so at least the administrative law judge was entitled to conclude.

If I were the trier of fact I might reach a different conclusion from the administrative law judge, but the function of this court in a black lung case turning on a question of fact is exhausted when we determine that the administrative law judge's factfinding is supported by substantial evidence on the record as a whole; and I do not see how it is possible to conclude that it was not. It is true that the legislative history of the black lung benefits law states that "in the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the *disabled* miner or his survivors." S.Rep. No. 743, 92d Cong., 2d Sess. 11 (1972), U.S.Code Cong. & Admin.News 1972, 2305, 2315. But of course the miner must be disabled ⸣(by black lung disease); and it is for the administrative law judge rather than for us to make this determination.

Nevertheless, since my brethren disagree with me that the administrative law judge's finding was supported by substantial evidence, the judgment of the Benefits Review Board is

AFFIRMED.

CUMMINGS, Chief Judge, concurring in part and dissenting in part.

▉ While I agree with the standard of review articulated by Judge Posner, his opinion does not appear to distinguish between substantial evidence to support a finding and substantial evidence to support a rebuttal of the statutory presumption of disability. While some slight evidence does support the administrative law judge's finding, that evidence is greatly outweighed by the testimony of Mr. Prewitt's personal physician and the description of the respiratory specialist. Therefore I agree with Judge Cudahy that the order of the Benefits Review Board should be affirmed.

**1.** The evidence noted by the ALJ does not provide a basis for knowing the degree to which

CUDAHY, Circuit Judge, concurring in the result:

▉ Since Judge Posner's opinion pursues an analysis which seems to contradict the purposes of the Black Lung Benefits Act, I must respectfully propose a counter-analysis. Putting to one side for the moment my reservations about the standard of review which Judge Posner has applied, even on that standard I would reject the ALJ's conclusion that no disability resulted from Prewitt's respiratory condition. The medical reports, it is agreed, simply contain no mention of the degree to which Prewitt was impaired by this condition. To my mind, there is a good reason for this omission: Prewitt was totally disabled by a heart condition, and there was no reason for the doctors treating him to speculate on how disabling his lung problem would have been if his heart were sound. Because these doctors did not speculate in that fashion, the ALJ and Judge Posner conclude that the statutory presumption of disability was rebutted. I cannot agree; treating this gap in the evidence as a decisive element in the case against Mary Prewitt runs seriously contrary to the remedial purposes of the Black Lung Benefits Act.

Eligible survivors of miners, who were employed for 25 or more years in coal mines before June 30, 1978 and who died on or before March 1, 1978, are entitled to benefits *unless* "it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(5) (made applicable to this case by 30 U.S.C. § 932(a)). If there were no evidence at all relating to disability, benefits presumably would have to be awarded. Simply because the evidence in this case discusses in detail Prewitt's more imminently threatening heart disorder, it does not follow that the lung impairment would not have been disabling to some degree. There is nothing in the record to establish affirmatively that Prewitt was *not* disabled by the secondary disease,[1] and I think the statute directs a grant of benefits in such a case.

Prewitt was disabled by black lung disease. . Neither the blood gas test nor a negative x-ray is

I believe that my position finds support in the purposes of the Black Lung Benefits Act as established by its legislative history. The 1969 Black Lung Benefits Act contained provisions for the payment of sums to disabled miners or their widows as a type of emergency assistance in an effort to "control the steady toll of life, limb, and lung, which terrorizes so many unfortunate families." H.R.Rep. No. 91–563, 91st Cong., 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Ad.News 2503 & 2515. The 1972 amendments to that Act were intended to be remedial and to assure that cases that should be compensated would be compensated. "In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors." S.Rep. No. 92–743, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2305, 2315. I do not understand the use of the word "disabled" in this passage to limit its application to demonstrably—as opposed to putatively—disabled miners, as Judge Posner apparently argues. In any event, in the case before us there are no definitive medical conclusions about the degree of Prewitt's disability, and I believe that the doubt resulting from that deficiency should be resolved in his favor and benefits should be awarded.

I would also note my concern about the appropriateness of the standard of review applied by the majority of the panel. While I recognize that this standard is currently employed by most, if not all, of the courts of appeal, I am unable to reconcile it either with logic or with the statutory language. While the standard, as announced, requires

the reviewing court to look at the decision of the ALJ and to see if that decision is supported by substantial evidence, the statute does not so direct.

> Any person adversely affected or aggrieved by a final order of the *Board* may obtain a review *of that order* in the United States court of appeals.... [T]he court shall have ... the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board....

33 U.S.C. § 921(c) (emphasis supplied).

In this case, the Board issued a full written opinion, as it is authorized to do when summary disposition is not appropriate, 20 C.F.R. § 802.404(c). That four-page order sets forth the Board's review of the evidence and its reasons for concluding that the ALJ's determinations were not supported by substantial evidence. As noted, the outcome in this case should be determined by a statutory presumption of disability unless there are adequately supported findings of nondisability; the Board could follow this approach and did not thereby "engage in a *de novo* proceeding or unrestricted review of the case." 20 C.F.R. § 802.301. There is no statutory authority for our ignoring the Board's order or regarding it only as an example to be considered in conducting our own review of the ALJ's decision.

As noted in Judge Posner's opinion, the statute and its legislative history are not particularly helpful in determining the appropriate standard of, or scope for, review. A standard is established for the Board's review of the ALJ's decision-substantial ev-

---

enough to disprove the existence of black lung disease and therefore could not rule out at least partial disability from the disease. I have noted the doctors' understandable failure to address the effects of the respiratory ailment. In addition to the testimony quoted in Judge Posner's opinion, Mrs. Prewitt also testified as follows:

Q: Do you recall when Mr. Prewitt first made his application for Black Lung benefits, back in January of 1976?

A: Yes.

Q: At that time he was complaining of shortness of breath. How long had he been complaining of that problem, do you know?

A: I would say probably since his heart attack, and in all truthfulness, probably several months before.

This portion was not acknowledged by the ALJ and undermines his assertion that Mrs. Prewitt said her husband's only health problem was his heart condition. I agree with the statement in the Board decision that "there is no substantial evidence supportive of a finding that the miner was not totally disabled or partially disabled by pneumoconiosis."

idence. 33 U.S.C. § 921(b)(3). But the language relating to judicial review, quoted above (33 U.S.C. § 921(c)), contains no such direction. Discussion of the issue in Congress was terse at best. "H.R. 12006 [the House bill on which this part of the Longshoremen's and Harbor Worker's Compensation Act was based] authorizes judicial review of board decisions in the courts of appeals under the same 'substantial evidence' test." H.R.Rep. No. 92–1441, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 4698, 4709. This could be read to mean the same test as under prior law. Prior law authorized review of decisions of deputy commissioners through injunction proceedings in the district courts. *Id.* at 4709. The deputy commissioners' decisions were to be accepted unless they were unsupported by substantial evidence on the record considered as a whole. *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951), *citing Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951). If Congress retained the "same" test for judicial review of decisions but contemplated a different source of decisions and this new source had different powers than the old, the Congressional meaning is necessarily unclear. Alternatively, Congress may have meant the "same" test as that used by the Board in its review of ALJ decisions. If this is the proper interpretation, we are still directed to apply the substantial evidence test to the Board decision, not the ALJ's decision. This alternative reading of the legislative history, although by no means conclusive, seems to support the position I favor.

Whatever may be the uncertainty about congressional intent, I continue to believe that, at least in cases where the Benefits Review Board has issued a new, full opinion which is prepared in accordance with the law, this court should determine whether that opinion, and not the ALJ's, is supported by substantial evidence. This view is based on the language of the statute, which refers only to our review of the *Board's* order, and on the dubiousness of the powers and status of the Board if the majority's alternative standard is correct. Under that standard, the review function of the Board is reduced to making a final ruling on cases, *unless* those cases are appealed to the federal courts.[2] If such an appeal is taken, the role of the Board is, at best, advisory; its determination of the case has no more weight than, for example, a brief submitted by one of the parties. Perhaps this is its intended function; a number of courts have held that it is. *See, e.g., Kalaris v. Donovan*, 697 F.2d 376, 382–83 (D.C.Cir.1983); *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172–73 (3rd Cir.1981); *Duluth, Missabe & Iron Range R. Co. v. Dept. of Labor*, 553 F.2d 1144, 1147 (8th Cir.1977). Despite these interpretations and that of the majority on this issue, I continue to be troubled by the plain language of the statute; the regulation directing the Board to prepare a full, written opinion; the fact that members of the Benefits Review Board (here two ALJs and one Administrative Appeals Judge) are trained and experienced in cases of this nature; and the fact that the Board exists within the Department of Labor and its opinion may reflect in part the policy concerns of the Secretary.

I concur in the affirmance of the Board's order.

---

**2.** The Board also has administrative duties. *See Kalaris v. Donovan,* 697 F.2d 376, 383 (D.C.Cir. 1983).